**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**KATHERINE JONES MITCHELL,** *et al.*                                                          **PLAINTIFFS**

**v.**                                         Case No. 3:19-cv-00370-LPR

**RELIANCE HEALTH CARE INC.,** *et al.*                                                        **DEFENDANTS**

**ORDER**

This case was originally filed in the Circuit Court of Mississippi County, Arkansas.[1] On December 18, 2019, Defendants removed the case to the Eastern District of Arkansas.[2] The Notice of Removal asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332(d) and federal question jurisdiction under 28 U.S.C. § 1331.[3] On January 17, 2020, Plaintiffs filed the instant Motion to Remand.[4] A hearing on the Motion was held on May 28, 2020. For the reasons discussed below, the Court grants Plaintiffs' Motion to Remand.

Plaintiffs are suing various nursing homes that are "owned, operated or managed by Defendants in the state of Arkansas."[5] Plaintiffs represent themselves and a class of persons "who were Residents of one or more of the Reliance nursing homes at any time during the Class Period and: (a) were Arkansas citizens during their respective residencies at the Reliance nursing homes; and (b) who entered into an Admission Agreement with one or more of the Reliance nursing homes

---

[1] First Am. Class Action Compl. (Doc. 3).

[2] Notice of Removal (Doc. 1).

[3] *Id.* ¶¶ 7, 20.

[4] Mot. to Remand (Doc. 24).

[5] First Am. Class Action Compl. (Doc. 3) ¶ 2 n.1.

for care and services in return for payment . . . ."[6] Plaintiffs assert that they suffered damages as a result of "Defendants' 1) violations of the resident Admission Agreements; 2) violations of the Arkansas Civil Rights Act; 3) violations of the Arkansas Deceptive Trade Practices Act; and 4) unjust enrichment."[7] Underlying most, if not all, of Plaintiffs' claims is their contention that Defendants refuse to sufficiently staff 14 of their nursing homes in violation of Defendants' statutory and contractual obligations.[8]

## DIVERSITY JURISDICTION

Defendants' Notice of Removal asserts that the Court has diversity jurisdiction under the Class Action Fairness Act ("CAFA") of 2005.[9] Under CAFA, a court has jurisdiction over a class action "in which the amount in controversy exceeds $5 million in the aggregate, there is minimal diversity among the parties, and there are at least 100 members in the class."[10] Plaintiffs contend that remand is appropriate because Defendants have failed to establish the minimal diversity requirement.

Minimal diversity is satisfied if "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant."[11] Both parties agree that all Defendants are Arkansas citizens.[12] Defendants assert that there is one Plaintiff—Harvey "Curtis" Jones—who is not an Arkansas citizen.[13] Defendants claim that Mr. Jones was a Texas citizen when he died, and that the Special

---

[6] *Id.* ¶ 132.

[7] Br. in Supp. of Mot. to Remand. (Doc. 25) at 2.

[8] First Am. Class Action Compl. (Doc. 3) ¶ 2.

[9] Notice of Removal (Doc. 1) ¶ 8.

[10] *Atwood v. Peterson*, 936 F.3d 835, 839 (8th Cir. 2019) (citing 28 U.S.C. § 1332(d)).

[11] 28 U.S.C. § 1332(d)(2)(A) (emphasis added).

[12] Notice of Removal (Doc. 1) ¶ 11; First Am. Class Action Compl. (Doc. 3) ¶ 2 n.1.

[13] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 19.

Administrator for his estate, Mary Katherine Sturdivant, is also a citizen of Texas. Defendants are wrong.

As a general matter, to determine a person's state of citizenship for purposes of the minimal diversity test, a court must determine the domicile of that person.[14] "To establish domicile, an individual must both be physically present in the state and have the intent to make his home there indefinitely."[15] Mr. Jones was physically present in Arkansas. According to Plaintiffs, Mr. Jones lived in Arkansas from February 1999 until his death on September 7, 2018.[16] Defendants' records establish that Mr. Jones lived in one of Defendants' Arkansas nursing homes from October 17, 2013 until his death in September 2018.[17] During those five years, it appears that Mr. Jones left the facility only 7 times for a total of 25 days.[18] And he always returned to the facility. When Mr. Jones died, his estate was probated in Arkansas.[19]

There is also ample evidence of Mr. Jones's intent to be domiciled in Arkansas indefinitely.[20] Intent is determined by objective factors, such as "declarations, exercise of civil and political rights, payment of taxes, obtaining of licenses, location of business or occupation, and ownership of property."[21] Just prior to entering Defendants' Arkansas nursing home in 2013, Mr. Jones held an Arkansas driver's license and an Arkansas Voter Registration Card.[22] He also

---

[14] *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1086 (8th Cir. 2017) ("For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms.").

[15] *Id.* at 1085 (quoting *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990)).

[16] Ex. A to Br. in Supp. of Mot. to Remand (Doc. 25-1) at 1.

[17] Ex. 1 to Defs.' Resp. to Mot. to Remand (Doc. 30-1) at 9.

[18] *Id.*

[19] Br. in Supp. of Mot. to Remand (Doc. 25) at 6; Ex. A to Br. in Supp. of Mot. to Remand (Doc. 25-1) at 2.

[20] *See* Exs. A - I to Pls.' Reply to Defs.' Resp. to Mot. to Remand (Doc 37-1).

[21] *Eckerberg*, 860 F.3d at 1085 (quoting *Bruton v. Shank*, 349 F.2d 630, 631 n.2 (8th Cir. 1965)).

[22] Mr. Jones held an Arkansas driver's license. His license listed his address as 1127 Pleasant Hill Road, Mulberry, Arkansas 72947. Ex. B to Pls.' Reply to Defs.' Response (Doc. 37-1) at 3. Mr. Jones held an Arkansas Voter Registration Card, listing his residence at 1127 Pleasant Hill Road, Mulberry, Arkansas 72947. Ex. D to Pls.' Reply

received Arkansas Medicaid benefits that are expressly limited to Arkansas residents.[23]  Before moving into one of Defendants' nursing homes, Mr. Jones listed an Arkansas residence on his Social Security benefit statement, his tax forms, his bank forms, and his auto insurance records.[24]  Once again, none of this is surprising, as it appears that Mr. Jones lived in Arkansas for nearly 20 years before he died.[25]

Defendants make three arguments.  First, Defendants assert that Mr. Jones was a Texas resident because he listed a Texas address when he was readmitted to Defendants' nursing home facility for the last time on January 22, 2018.[26]  But the January 22 admission form also lists "Medicaid-AR" as Mr. Jones's primary payer, which as explained above is only available to Arkansas citizens.[27]  Although there is nothing explaining his short absence from the nursing home in this part of 2018, it appears likely that Mr. Jones simply spent the weekend visiting his daughter

---

to Defs.' Response (Doc. 37-1) at 5.  The Court notes that 1127 Pleasant Hill Road, Mulberry, Arkansas 72947 is a residential address.

[23] Mr. Jones received Arkansas Medicaid benefits in 2018.  Ex. F to Pls.' Reply to Defs.' Response (Doc. 37-1) at 7.  In order to receive Arkansas Medicaid benefits, one must be a resident of the State of Arkansas.  *See* Ex. G to Pls.' Reply to Defs.' Response (Doc. 37-1) at 8; *see also* Ark. Code R. 016.20.1-D-310 ("A non-institutionalized individual age 21 or over is a resident of the State where he is living, and . . . [i]ntends to remain permanently or for an indefinite period of time, or . . . entered with a job commitment or seeking employment.").

[24] Mr. Jones received Social Security benefits in Arkansas. Mr. Jones's Social Security benefit statement listed his address as P.O. Box 408, Mulberry, Arkansas 72947.  Ex. H to Pls.' Reply to Defs.' Response (Doc. 37-1).  Mr. Jones paid state income tax in Arkansas.  His income tax statement listed his residence as P.O. Box 408, Mulberry, Arkansas 72947.  Ex. C to Pls.' Reply to Defs.' Response (Doc. 37-1) at 10.  Mr. Jones held bank accounts at Bank of the Ozarks.  Mr. Jones's bank statement listed his address at 1127 Pleasant Hill Road, P.O. Box 408, Mulberry, Arkansas 72947.  Ex. E to Pls.' Reply to Defs.' Response (Doc. 37-1) at 6.  Mr. Jones obtained insurance in Arkansas.  His automobile insurance records list his residence as P.O. Box 408, Mulberry, Arkansas 72947.  Ex. I to Pls.' Reply to Defs.' Response (Doc. 37-1) at 11.

[25] Ex. A to Br. in Supp. of Mot. to Remand (Doc. 25-1) at 1.  Possibly recognizing the weakness of their arguments, Defendants requested "limited jurisdiction discovery" regarding Mr. Jones's domicile.  Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 21 n.5.  But this request was embedded in a footnote in the middle of Defendants' Brief in Support of their Response.  *Id.*  At the remand hearing, the Court orally denied the request and explained that a footnote in a brief does not constitute a Motion.  May 28, 2020 Hr'g Tr. at 39.  Defendants have not made a formal request for discovery since the Court's oral ruling.

[26] Ex. 2 to Defs.' Resp. to Mot. to Remand (Doc. 30-2) at 1.

[27] *Id.  See* Ark. Code R. 016.20.1-D.

4

in Texas.[28] Indeed, according to the facility's records, Mr. Jones left the facility on Friday, January 19, 2018 and returned on Monday, January 22, 2018.[29] Mr. Jones's single weekend trip to Texas does not overcome the overwhelming evidence suggesting that Mr. Jones intended to be an Arkansas resident.

Second, Defendants assert that courts have recognized that the location of a person's family is a persuasive indicator of domicile.[30] According to Defendants' records, one of Mr. Jones's daughters lived in Florida and the other lived in Texas.[31] Defendants further note that Mr. Jones's pharmacy and two of his five healthcare providers were all located in Texarkana, Texas.[32] But Defendants brush over the fact that the majority of Mr. Jones's healthcare providers were located in Texarkana, Arkansas.[33]

Third, Defendants assert that Plaintiffs' evidence of domiciliary intent is out-of-date because it mostly relates back to 2012 and 2013. As demonstrated above, Mr. Jones entered into one of Defendants' nursing homes in October of 2013. Thus, the most relevant documents relating to Mr. Jones's domicile are those dated just prior to his admission into the facility. Plaintiffs have demonstrated that just prior to entering into Defendants' Arkansas nursing home, Mr. Jones was an Arkansas citizen. After being admitted into Defendants' Arkansas nursing home facility, it is undisputed that Mr. Jones lived in Arkansas for the next four years and eleven months. During that time, he left the facility 7 times for a total of 25 days. When Mr. Jones died, his estate was

---

[28] Ex. 2 to Defs.' Resp. to Mot. to Remand (Doc. 30-2) at 1. The admission form indicates that Mr. Jones was not staying at the hospital during his absence. His daughter from Texas, Kathy Sturdivant, was his "responsible party" and was the closest family member for a weekend visit.

[29] Ex. 1 to Defs.' Resp. to Mot. to Remand (Doc. 30-1) at 9.

[30] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 20.

[31] Ex. 2 to Defs.' Resp. to Mot. to Remand (Doc. 30-2) at 1-2.

[32] *Id.* at 1.

[33] *Id.*

probated in Arkansas. Thus, before, during, and after Mr. Jones's stay at Defendants' Arkansas nursing home, Mr. Jones appears to have been an Arkansas citizen. Based on all of the evidence, the Court concludes that Mr. Jones was physically present in Arkansas and intended to be an Arkansas citizen. Accordingly, Mr. Jones is an Arkansas citizen for purposes of this case.

Trying a different tact, Defendants point to the domicile of Mary Katherine Sturdivant. But Ms. Sturdivant's domicile has no bearing on the Court's jurisdiction for two reasons. First, for purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."[34] Because Mr. Jones is an Arkansas citizen, his legal representative is also deemed an Arkansas citizen for purposes of the instant inquiry. Second, the Special Administrator for Mr. Jones's estate is *not* Mary Katherine Sturdivant. Plaintiffs' Amended Complaint clearly states that "Steve Harrelson . . . is the Court appointed Special Administrator of the Estate of Harvey 'Curtis' Jones."[35] Mr. Harrelson signed an affidavit both affirming that his own domicile is Arkansas and asserting that Mr. Jones was a citizen of Arkansas for almost 20 years.[36]

For the foregoing reasons, Defendants have failed to establish minimal diversity of citizenship. As a result, Defendants have failed to establish that the Court has diversity jurisdiction under CAFA.

**FEDERAL QUESTION JURISDICTION**

Defendants contend that this Court has federal question jurisdiction under 28 U.S.C. § 1331. We all know the "well-pleaded complaint rule," which as a general matter means that federal

---

[34] 28 U.S.C. § 1332(c)(2).

[35] First Am. Class Action Compl. (Doc. 3) at 23; Ex. 11 to First Am. Class Action Compl. (Doc. 3) at 134-36.

[36] Ex. A to Br. in Supp. of Mot. to Remand (Doc. 25-1).

question jurisdiction only exists when a federal question is presented on the face of a plaintiff's properly pleaded complaint.[37]  That rule recognizes the plaintiff as the master of the complaint. Indeed, one of the "paramount policies embodied in the well-pleaded complaint rule" is "that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."[38]  In other words, a plaintiff does not have to assert a federal claim simply because one is available.[39]  Nor does a plaintiff have to assert a federal claim just because it provides the better course for recovery.[40]  A plaintiff is entitled to plead only state-law claims even if it will ultimately result in less of a recovery than it would have had the plaintiff also pleaded available federal claims.[41]

Plaintiffs here maintain that the face of the Amended Complaint only asserts state-law claims.  Specifically, the face of Plaintiffs' Amended Complaint asserts: (1) breach of contract; (2) violations of the Arkansas Civil Rights Act; (3) violations of the Arkansas Deceptive Trade Practices Act; and (4) unjust enrichment.  Because all of these claims are state-law causes of action, Plaintiffs contend that there are no federal questions presented on the face of the Amended Complaint.[42]

---

[37] *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020).

[38] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).

[39] *Moore v. Kan. City Pub. Sch.*, 828 F.3d 687, 693 (8th Cir. 2016) ("Even if the relief [the plaintiff] requested were available under both state law and the IDEA, the well-pled complaint rule protects [the plaintiff]'s 'right to choose a state law cause of action.'") (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994)).

[40] *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also Guy v. State Farm Auto. Ins. Co.*, No. 3:13CV00229 JLH, 2013 WL 6511927, at *2 (E.D. Ark. Dec. 12, 2013).

[41] *Piccirilli v. Windstream*, No. 4:07CV00938 SWW, 2007 WL 9735879, at *1 (E.D. Ark. Oct. 31, 2007) ("[E]ven if both federal and state law provide a remedy to the plaintiff, the plaintiff can avoid federal jurisdiction by pleading state law-at the price, of course, of foregoing the federal remedies.").

[42] Br. in Supp. of Mot. to Remand (Doc. 25) at 2.

There are, of course, limitations and exceptions to well-pleaded complaint rule.[43] Defendants' arguments in favor of federal question jurisdiction center on the scope of those limitations and exceptions. First, Defendants assert that Plaintiffs "have used 'artful pleading' to disguise what is effectively a *qui tam* lawsuit in the garb of state-law claims to avoid the substantive and procedural demands of the federal False Claims Act."[44] Second, Defendants argue that Plaintiffs' Amended Complaint "necessarily raises substantial and disputed issues of federal law."[45] These arguments are considered in turn.

### I. Artful Pleading Doctrine

The artful pleading doctrine is a corollary to the well-pleaded complaint rule.[46] Under the artful pleading doctrine, a defendant may remove a case to federal court when the plaintiff has attempted to defeat removal by failing to plead a necessary federal question.[47] "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint."[48] The quintessential artful pleading case involves a plaintiff that pleads a state-law claim that is completely and obviously preempted by federal law.[49]

---

[43] *See, e.g.*, *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015).

[44] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 1.

[45] *Id.* at 2.

[46] *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1220 (8th Cir. 2006).

[47] *Id.* (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)).

[48] *Rivet*, 522 U.S. 475.

[49] *See id.* ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. *See Metropolitan Life Ins. Co.*, 481 U.S., at 65-66, 107 S.Ct., at 1547-1548 (upholding removal based on the preemptive effect of § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974); *Avco Corp. v. Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (upholding removal based on the preemptive effect of § 301 of the Labor Management Relations Act, 1974). Although federal preemption is ordinarily a defense, '[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.' *Caterpillar*, 482 U.S., at 393, 107 S.Ct., at 2430.").

Defendants assert that Plaintiffs' unjust enrichment claim is a product of artful pleading. Plaintiffs' unjust enrichment claim states that "Plaintiffs, Proposed Class members, their legal representatives, [and] *others acting on their behalf* paid money to Defendants" for services that were never delivered.[50]  Plaintiffs assert that Defendants' "retention of *such monies* is unjust," and that "Plaintiffs and Proposed Class members are entitled to receive compensatory damages in an amount *equal to the monies Defendants were paid* less the reasonable value of the benefits and services Plaintiffs did not receive."[51]

According to Defendants, Medicare and Medicaid were the primary payors for the majority of the monies Defendants were paid.[52]  Thus, Defendants assert that by seeking to recover money that "others acting on [Plaintiffs'] behalf" paid to Defendants, Plaintiffs' unjust enrichment claim "is, in reality, seeking to recover Medicare and Medicaid funds in an action that is governed by the federal False Claims Act."[53]  Because "[a] claim to recover funds paid by Medicare and Medicaid sounds *only* in federal law," Defendants contend that the claim "may be brought *only* in federal court."[54]

If Plaintiffs were attempting to recover Medicare or Medicaid funds, Defendants would have a strong argument. But that's not the case at bar. Plaintiffs' Reply Brief indicates that they are not seeking to recover "Medicare or Medicaid monies paid to Defendants, but rather monies that Plaintiffs (or their legal representatives) paid Defendants."[55]  At the remand hearing, the Court

---

[50] First Am. Class Action Compl. (Doc. 3) ¶¶ 197-99 (emphasis added).

[51] *Id.* ¶¶ 201-02 (emphasis added).

[52] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 5.

[53] *Id.* at 2.

[54] *Id.* at 7 (emphasis in original).

[55] Pls.' Reply in Supp. of Mot. to Remand (Doc. 37) at 6.  Because this statement was not made until Plaintiffs filed a Reply, the Court held a hearing to further test Plaintiffs' assertion.

probed further into this statement.[56] Plaintiffs affirmed not only that they were not attempting to recoup any monies paid from Medicare or Medicaid, but also that that they would be judicially estopped from doing so if the Court relied on that representation to remand the case.[57] Plaintiffs used some loose language in their Amended Complaint that could have theoretically extended to Medicare and Medicaid funds.[58] But they have since made crystal clear that the relevant language in the Amended Complaint was not intended to cover and does not cover Medicare or Medicaid funds. On remand, Plaintiffs will be seeking only money that has been paid to the nursing homes by Plaintiffs themselves or by private entities acting on Plaintiffs' behalf.[59] If Plaintiffs seek reimbursement of any Medicare or Medicaid monies, in addition to judicial estoppel kicking in, Defendants may remove the case again to this Court.[60]

Plaintiffs' concessions highlight the distinction between this case and *United States v. Aggarwal*.[61] Defendants cite *Aggarwal* as support for the proposition that Plaintiffs lack state-law standing to bring their unjust enrichment claim and thus must in reality be artfully pleading a Medicare or Medicaid claim.[62] In *Aggarwal*, the plaintiff asserted unjust enrichment when the United States and the State of Florida reimbursed the defendant for Medicare and Medicaid claims

---

[56] May 28, 2020 Hr'g Tr. at 6-8.

[57] *Id.* at 8.

[58] First Am. Class Action Compl. (Doc. 3) ¶¶ 197-202.

[59] Neither the general fungibility of money nor the fact that a large share of a nursing home's revenue may come from Medicare or Medicaid somehow automatically turns an unjust enrichment claim into a False Claims Act claim where Plaintiffs foreswear any request for Medicare or Medicaid funds. And the Court has not been directed to a statute, regulation, or case that completely preempts state law claims such as unjust enrichment claims against a facility because that facility accepts Medicare or Medicaid payments or because such payments make up the lion's share of the facility's revenue.

[60] The Court emphasizes that saying that "Defendants may remove the case again" does not necessarily mean that the Court will ultimately conclude that it has jurisdiction over the case. The Court will consider its jurisdiction if and when this specific question returns to the Court.

[61] No. 6:03CV117ORL31KRS, 2004 WL 5509107 (M.D. Fla. Nov. 8, 2004).

[62] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 5.

10

for which the defendant was not entitled. The Federal District Court of Florida determined that the plaintiff in *Aggarwal* lacked standing to assert unjust enrichment because she did "not allege that [the defendant] was unjustly enriched at *her expense*, and thus fail[ed] to allege that she was *personally injured* in fact."[63] *Aggarwal* is clearly distinguishable from the case here. Indeed, not only do Plaintiffs here assert personal injury in their unjust enrichment claim, they have expressly disavowed any claim for Medicare or Medicaid monies.[64]

A quick comparison between the conduct alleged in Plaintiffs' Amended Complaint and the conduct necessary to support a False Claims Act violation underscores the Court's conclusion that the unjust enrichment claim is not an artfully pleaded False Claims Act claim. To make a *prima facia* case under the False Claims Act, a complaint must show that "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."[65] Importantly, the False Claims Act attaches liability, not to the underlying fraudulent activity, but to the claim for payment. Thus, the falsehood in the claim must be material to the payment decision. "Without sufficient allegations of materially false claims, a False Claims Act complaint fails to state a claim on which relief may be granted."[66]

Plaintiffs correctly assert that their Amended Complaint does not allege that Defendants employed fraud in claiming payments from Medicare and Medicaid.[67] In fact, it appears that Plaintiffs could not care less whether Defendants defrauded the federal government. Plaintiffs are concerned with Defendants' contractual performance (or lack thereof) irrespective of whether

---

[63] *Aggarwal*, No. 6:03CV117ORL31KRS, 2004 WL 5509107, at *5 (M.D. Fla. Nov. 8, 2004) (emphasis added).

[64] Pls.' Reply in Supp. of Mot. to Remand (Doc. 37) at 6; May 28, 2020 Hr'g Tr. at 6-8.

[65] *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quotation omitted).

[66] *Id.* (quoting *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011)); *see also* 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3730(b).

[67] Br. in Supp. of Mot. to Remand (Doc. 25) at 12-13.

Defendants made righteous claims for payment. Once again, the False Claims Act attaches liability, *not* to the underlying fraudulent activity, but to the *claim for payment*.[68] Without allegations of fraud relating to the claim for payment, the Amended Complaint cannot fairly be said to be trying mask a claim under the False Claims Act.[69]

This is not to say that the artful pleading doctrine requires all elements of a federal statute to be met before concluding federal jurisdiction exists. There are numerous cases where a case is removed, federal jurisdiction is found to exist under the artful pleading doctrine, and the federal court determines a Rule 12(b)(6) dismissal is appropriate. Indeed, in complete preemption cases, this is often the very point of exercising federal question jurisdiction under the artful pleading doctrine.[70] Still, the large disjunct here between the pleading requirements of a False Claims Act claim and the actual facts alleged in the unjust enrichment claim adds some weight to Plaintiffs' argument that they are not using unjust enrichment to sneak a False Claims Act claim into state court.

For all of the foregoing reasons, and because "all doubts about federal jurisdiction must be resolved in favor of remand,"[71] the Court concludes that Plaintiffs' unjust enrichment claim is not

---

[68] *See Slater v. Capital Seniorcare Ventures, LLC*, No. 5:12-CV-447-DPM, 2013 WL 1367341, at *1 (E.D. Ark. Apr. 4, 2013) (remanding the case back to the state court because "[t]he substantive measure of Defendants' allegedly wrongful conduct will turn on what Defendants did with the federal money and why, not how they got it"); *see also Main & Associates, Inc. v. Blue Cross and Blue Shield of Ala.*, 776 F.Supp.2d 1270, 1278 (M.D. Ala. 2011) (reasoning that the plaintiff's unjust enrichment claim could not be converted into a claim under the False Claims Act because "the Complaint [was] utterly devoid of any allegations that [defendant] submitted false claims to the federal government or defrauded the federal government").

[69] Any suggestion that fraud is implicit in Plaintiffs' allegations does not suffice. Allegations of fraud must be specifically pleaded in order to state a claim. *See U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) ("Grounded in fraud, FCA claims must satisfy Rule 9(b)'s heightened pleading requirement: '[A] party must state with particularity the circumstances constituting fraud or mistake.' To meet this standard and enable the defendant to respond 'specifically and quickly,' a complaint alleging fraud 'must identify who, what, where, when, and how.'") (quoting *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003)).

[70] *See Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 251 (8th Cir. 2012).

[71] *Moore*, 828 F.3d at 691 (quotation omitted).

12

an artfully pleaded claim under the False Claims Act. Plaintiffs' unjust enrichment claim is a state law claim that does not provide a jurisdictional hook for removal.[72]

## II.  Substantial and Disputed issues of Federal Law

Even when federal law does not create the underlying cause of action, federal question jurisdiction may still apply if the resolution of the state-law claim *hinges* on the resolution of a substantial federal issue. This is a relatively rare exception to the well-pleaded complaint rule; put another way, the federal interest in an open and disputed federal issue must be *really* weighty to justify federal jurisdiction over a state-law claim.[73] In order for this exception to apply, Defendants must show (1) that Plaintiffs' state-law claim necessarily raises a stated federal issue, (2) that the federal issue is disputed, (3) that the federal issue is substantial, and (4) that exercising jurisdiction over the case will not disturb any congressionally approved balance of federal and state judicial responsibilities.[74]

Defendants think that one or more of Plaintiffs' claims necessarily raise a federal issue.

---

[72] At the remand hearing, Defendants revealed for the first time that Plaintiffs' counsel had previously filed a similar case in the Western District of Arkansas. May 28, 2020 Hr'g Tr. at 15-17. In that case, Judge Hickey denied the plaintiffs' motion to remand, determining that the court had diversity jurisdiction pursuant to CAFA. Judge Hickey did not consider the defendants' alternative theories of jurisdiction. Nevertheless, Defendants argued at the hearing that Plaintiffs' Amended Complaint in this case is essentially the same as the plaintiffs' complaint in the previous case, with one key distinction—all of the federal laws and claims have been stripped from the pleadings in this case. Plaintiffs admit that they have completely removed all federal claims from the instant action, but they strongly dispute Defendants' characterization of that decision. May 28, 2020 Hr'g Tr. at 49-52.

The Court has reviewed and compared the relevant pleadings in each case. While there is an undeniable overlap between the two cases, the Court believes that the changes made from one case to the other are representative of Plaintiffs' decision, as the masters of their Complaint, to drop the federal issues sought by the previous plaintiffs in exchange for a state forum. Given Plaintiffs' multiple concessions, it does not appear that Plaintiffs are employing artful pleading in an effort to retain federal issues asserted by different plaintiffs in a different case. Nevertheless, the Court emphasizes once again that this action may be removed again if it becomes clear that Plaintiffs are asserting federal claims or relying on federal issues that Plaintiffs expressly disavowed during the remand hearing.

[73] *See Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

[74] *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 331 (8th Cir. 2016) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

That is because they think one or more of the claims are based in whole or part on violations of federal law.[75] Plaintiffs dispute this proposition. Plaintiffs are right.

There are no federal causes of action pleaded in this case. Accordingly, if there is a substantial federal issue in the case, it is embedded in one or more of the claims. Defendants point to the breach of contract claim to argue that there is an embedded federal issue. Specifically, Defendants note that Plaintiffs are basing their breach of contract claim on an alleged breach of the contractual obligation "to furnish routine nursing and personal care . . . and such other items as may be required by the Patient's known physical condition or by law for his or her health, safety, and welfare."[76] Defendants argue that "[t]here is nothing in the admission agreement that limits the reference to 'by law' to mean only state law, so that the reference necessarily includes all applicable laws, including federal law."[77] This argument about the incorporation of federal law is essentially the same with respect to all the claims in the case that turn on the language in the admission agreement.[78]

Defendants are operating from an incorrect understanding of Plaintiffs' Amended Complaint. Whatever might be the scope of the words "by law" in the contractual agreement, the Amended Complaint shows a laser-like focus on alleged violations of specific *state* laws.[79] In comparison, the Amended Complaint does not mention the violation of any federal laws as part of its breach of contract claim (or any other claim for that matter). Under questioning from the Court

---

[75] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 13.

[76] Ex. 1 to First Am. Class Action Compl. (Doc. 3) at 102; *see also* First Am. Class Action Compl. (Doc. 3) ¶¶ 10-15.

[77] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 13.

[78] For example, Plaintiffs assert as part of their ADTPA claim that Defendants falsely represented that they would furnish their residents with "routine nursing and personal care, lodging, meals, linens, and such other items as may be required . . . by law for his or her health, safety, or welfare." First Am. Class Action Compl. (Doc. 3) ¶ 95.

[79] The Court is using a broad meaning of "laws" to include statutes, regulations, and other official actions. *See, e.g., id.* ¶¶ 11-16, 18, 70 n.9, 71-72, 82, 84, 94-95, 99-101, 103, 105, 109, 144, 152-53, 155, 172, 177, 185, 187-88, 192.

14

at the remand hearing, Plaintiffs made clear that the breach of contract claim (and the other claims) in their Amended Complaint is based on violations of state law as opposed to federal law.[80] For its part, the Court made clear that, if this case was remanded, Plaintiffs would be stuck with that commitment.[81] The Court also made clear that if on remand Plaintiffs attempt to use any federal laws as evidence of a breach of contract (or for any of the other claims in the Amended Complaint), Defendants can once again remove the case to federal court.[82]

Defendants' pushback is that the state laws cited by Plaintiffs in their Amended Complaint "will not support any claim against the [D]efendants."[83] Defendants' logic then goes something like this: because the state laws identified will not support any claim, that "leav[es] only federal statutes and regulations that plaintiffs[] have artfully avoided citing" as the real laws underlying the breach of contract claim (and other claims) in the Amended Complaint.[84] But there are serious problems with this position.

Most fundamentally, even if Defendants are correct that the "state laws identified will not support any claim," that simply means Plaintiffs should lose their case in state court. It does not mean that this Court gets to assume Plaintiffs are actually going to rely on federal laws when everything in their Amended Complaint and in their representations to this Court suggests the exact opposite. Were this Court to act in that way, it would violate the clear and precedential rule that "all doubts about federal jurisdiction must be resolved in favor of remand."[85]

---

[80] May 28, 2020 Hr'g Tr. at 9-14, 51-55.

[81] *Id.*

[82] *See supra* note 72. The content and warning in that footnote applies here as well. *But see supra* note 60. That caveat also applies.

[83] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 13.

[84] *Id.* at 14.

[85] *Moore*, 828 F.3d at 691 (quotation omitted).

Additionally, it is not clear that Defendants are correct that the "state laws identified will not support any claim." For example, Plaintiffs' Amended Complaint asserts that Defendants violated their contract with Plaintiffs as evidenced by Defendants' failure to comply with Arkansas Code Annotated Sections 20-10-1402 and 20-10-1403.[86] Defendants contend that these Arkansas statutes do not create a private right of action. Instead, they merely establish licensure standards for a nursing home looking to obtain a license or renew its existing license. But the fact that a statute does not provide for a private right of action is not *necessarily* dispositive of whether the statute can be used as evidence of a breach of a contract that requires adherence to relevant state laws. That's at least an open question in this Circuit.[87] Defendants further assert that, because Defendants are already licensed under these statutes, they cannot be sued for noncompliance with these statutes as a matter of law.[88] The Court is not quite convinced that Defendants are correct. Assume a facility had the statutorily required number of staff when it was licensed, but then dropped its staffing levels below that number and hid that fact from the Department of Human Services. That strikes the Court as a situation where the facility would still be licensed, but a plaintiff could credibly say the facility was not staffing per the licensing requirement. It is not clear that the Department of Human Services would have to actually find a violation before that violation could be used as evidence of a contractual breach. The Court is not deciding the two questions in this paragraph. The Court is just pointing out that the answers are not clear, which cuts against Defendants' argument that this case must be about federal law.

Because Plaintiffs' state-law claims do not raise a substantial federal issue, the Court need

---

[86] First Am. Class Action Compl. (Doc. 3) ¶¶ 11-15. *See Great Lakes Gas Transmission Ltd. P'ship*, 843 F.3d at 334 (expressing "heightened" reluctance about removal "in this case because 'the interpretation of a contract is ordinarily a matter of state law to which we defer'").

[87] *Cf. Ilodianya v. Capital One Bank USA NA*, 853 F. Supp. 2d 772, 774 (E.D. Ark. 2012).

[88] Br. in Supp. of Defs.' Resp. to Mot. to Remand (Doc. 31) at 13.

not address the remaining portions of the *Grable* test.

## CONCLUSION

For the forgoing reasons, Plaintiffs' Motion to Remand is GRANTED.  The Court stresses that its ruling is in reliance on the representations that Plaintiffs' counsel made during the remand hearing, that Plaintiffs are judicially estopped from seeking (in this lawsuit) Medicare or Medicaid funds, and that Plaintiffs are judicially estopped from relying on a violation of any federal laws as evidence of a breach of contract or as evidence supporting other claims in this case.  The Court further notes that if on remand Plaintiffs deviate from either of their foregoing representations to the Court, Defendants may once again file a notice of removal.

IT IS SO ORDERED this 28th day of August 2020.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE